IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| MIKE ALBERT, Ltd., | : | Case No. 1:21-cv-286 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| 540 AUTO REPAIR, INC., et al, | : | |
| | : | |
| Defendant. | : | |

---

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS (Doc. 4 & Doc. 14)

---

This case is before the Court on Defendant Abdul Abukatab's Motion to Dismiss for Lack of Jurisdiction (Doc. 4) and Defendants Abdul and Zoila Abukatab's (jointly, "Individual Defendants") Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 14). Plaintiff filed a response in opposition to each motion (Docs. 11 & 19), to which the Individual Defendants filed a joint reply (Doc. 32), making this matter ripe for review. For the reasons below, the Individual Defendants' Motion (Doc. 14) is **DENIED.** Additionally, Defendant Abdul Abukatab's Motion (Doc. 4) is hereby **DENIED AS MOOT.**[1]

---

[1] "An amended complaint supersedes the original pleading, thus rendering motions to dismiss moot." *O'Malley v. NaphCare, Inc.,* No. 12-cv-326, 2013 WL 1438028 at *2 (S.D. Ohio Apr. 9, 2013). Here, Defendant Abdul Abukatab filed his Motion to Dismiss for Lack of Jurisdiction (Doc. 4) prior to Plaintiff filing its Amended Complaint (Doc. 7). Thus, Defendant Abdul Abukatab's Motion to Dismiss addressed a pleading which is no longer operative and must be denied as moot.

## FACTS

This action, at its core, involves a business deal gone south. Plaintiff Mike Albert Ltd. ("Plaintiff") contends that Defendants behaved improperly as to the transaction in multiple ways, asserting claims of Breach of Contract against Defendant 540 Auto Repair, Inc. ("540 Auto"); Action on Account against Defendant 540 Auto; Unjust Enrichment against all Defendants; Conversion against all Defendants; Fraudulent Inducement against all Defendants; and Alter Ego against the Individual Defendants.

### A. The Contractual Parties and the Principals

The two parties to the business deal identified above are Plaintiff and Defendant 540 Auto. Plaintiff is the sole beneficial owner of Mike Albert Leasing, Inc. ("MAL"), which "is a vehicle fleet management company headquartered in Cincinnati, Ohio" whose "core business is the long-term leasing of cars, vans and trucks to other businesses for their use in conducting business operations." (Amended Complaint ("Am. Compl."), Doc. 7, Pg. ID 96-97.)

540 Auto is an automobile repair business located in Chicago, IL who "also sells, rents or uses vehicles in connection with taxicab or ridesharing services . . ." (*Id.* at 98.) 540 Auto only has six employees. (*Id.*) Two of these employees, Defendant Zoila Abukatab and her husband, Abdul, appear to primarily run 540 Auto. (Declaration of Keith Miller,[2] Doc. 19-1, Pg. ID 536).

Defendant Zoila Abukatab has been identified as holding many roles at 540 Auto.

---

[2] The Court has considered sources outside of the pleadings, such as the declaration, only for purposes of the Rule 12(b)(2) Motion which, as set forth below, is permissible.

First, she is identified as the sole shareholder of 540 Auto. (Motion to Dismiss ("MTD"), Doc. 14, Pg. ID 203.) Second, she is identified as its President. Indeed, Ms. Abukatab signed the Lease Agreement on behalf of 540 Auto, listing her title as President, and initialed on every page of the Lease Agreement on the "Lessee Initials" lines provided. (Lease Agreement, Doc. 7-1, Pg. ID 106-21.) Ms. Abukatab is also identified as the President of 540 Auto in the Individual Defendant's Motion to Dismiss. (MTD, Doc. 14, Pg. ID 203.) Third, she is identified as an Administrative Manager under the "Principal" section of 540 Auto's Credit Application submitted to MAL. (Am. Compl., Doc. 7, Pg. ID 98.) Lastly, Plaintiff pled that Ms. Abukatab is the owner of 540 Auto. (*Id.* at 103.) This is consistent with Ms. Abukatab's representations to Keith Miller, the Vice President and Treasurer of Plaintiff, who stated in his Declaration that Ms. Abukatab presented herself as the owner of 540 Auto. (Declaration of Keith Miller,Doc. 19-1, Pg. ID 538-39.)

Defendant Abdul Abukatab is Zoila Abukatab's husband and was similarly identified as being intrinsically involved in 540 Auto. (Am. Compl., Doc. 7, Pg. ID 9.) Mr. Abukatab "initiated contact with MAL for the purpose of entering into [the Lease Agreement]" and "negotiated the proposed agreement and was the individual who at all times communicated with MAL on behalf of 540 Auto." (Declaration of Keith Miller, Doc. 19-1, Pg. ID 536.) Additionally, on the Credit Application, 540 Auto provided Mr. Abukatab's email address as the business email contact. (*Id.*) This email contained Mr. Abukatab's signature as the "Managing Partner" of 540 Auto. (*Id.*) Also, Mr. Abukatab identified himself as the "Business Operations Manager" under the Principal section of the Credit Application. (Credit Application, Doc. 19-2, Pg. ID 541.) Plaintiff alleges that

3

Mr. Abukatab "at all times presented himself as in charge of all decisions relating to 540 Auto and its relations with MAL and that Mr. Abukatab, on behalf of 540 Auto, requested multiple vehicles for lease by contacting MAL via email and telephone between June 11, 2018 and December 31, 2020 . . ." (Declaration of Keith Miller, Doc. 19-1, Pg. ID 536-37.)

B.    The Lease Agreement

MAL and 540 Auto entered into a Commercial Motor Vehicle Master Lease Agreement ("Lease Agreement") on June 11, 2018. (Am. Compl., Doc. 7, Pg. ID 98.) The Lease Agreement provided "the terms and conditions under which MAL would lease to 540 Auto certain motor vehicles for use in its business, and the monthly rental to be paid by 540 Auto to MAL for such vehicles." (*Id.*) Additionally, the Lease Agreement provided "that MAL would retain ownership and legal title to the leased vehicles during the term of the Lease Agreement" and that "[u]pon the expiration, cancellation or termination of the Lease Agreement with respect to any vehicle . . . that 540 Auto could elect either to surrender such vehicles to MAL for resale to a third party, or to purchase them from MAL from fair market value." (*Id.*) Lastly, the Lease Agreement contained a forum selection clause, which provided:

> This Agreement shall be interpreted and applied in accordance with the substantive law of the State of Ohio without giving effect to its conflicts of law rules. Lessee and Lessor agree that this Agreement is an agreement deemed made in Ohio. Lessee and Lessor hereby submit to the non-exclusive jurisdiction of the district court of the United states for the Southern District of Ohio and of any other court of applicable jurisdiction located in Cincinnati, Ohio.

(Lease Agreement, Doc. 7-1, Pg. ID 119.)

**C.      The Business Deal Purportedly Fell Apart**

Plaintiff alleges that 540 Auto defaulted on its obligations to MAL under the Lease Agreement, claiming 540 Auto currently owes a principal balance of $388,874.68. (Am. Compl., Doc. 7, Pg. ID 99.) Plaintiff also alleges this balance relates to "lease payments, title fees, administrative costs, finance charges and other amounts not yet quantified . . ." (*Id*.)

Additionally, five vehicles subject to the Lease Agreement are unaccounted for. (*Id*.) Of relevant note to the Individual Defendants' Motion to Dismiss, during the term of the Lease Agreement and the parties' business relationship, MAL purchased three vehicles, Units 1009007, 1009008, 1009009, from 540 Auto to lease back to 540 Auto in connection to the Lease Agreement. (*Id*.) Plaintiff alleges that 540 Auto, and the Individual Defendants by proxy, failed to deliver legal title of these three vehicles and, thus, have not been repossessed. (*Id*.) Additionally, Plaintiff alleges that the Defendants knew they were not going to deliver legal title of the Units to Plaintiff and that the promise to deliver legal title induced Plaintiff to purchase the Units. (*Id*. at 102.) Plaintiff also repossessed an additional vehicle, Unit 989302, in September of 2020. (Id. at 99). However, 540 Auto had purportedly sold this vehicle and assigned title to a third party. (*Id*.) Thus, Plaintiff is unable to sell or dispose of Unit 989302. (*Id*.) Lastly, Unit 990504 remains titled in Plaintiff's name. (*Id*.) However, Defendants purported to sell and deliver possession of this vehicle to a party outside of the United States. (*Id*. at 99-100.)

The Individual Defendants now seek to dismiss the complaint against them pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

5

## LAW

The motions before the Court are premised on two separate Rules of Procedure, and thus have two separate standards. First, Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to move for dismissal based on lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant through "specific facts." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). In considering a motion to dismiss for lack of personal jurisdiction, a court may: (1) rule on the motion based on affidavits submitted by the parties; (2) permit jurisdictional discovery; or (3) hold an evidentiary hearing to resolve the motion. *See Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1272 (6th Cir. 1998).

"When a defendant moves to dismiss a case pursuant to Fed. R. Civ. P 12(b)(2), and the district court rules on the motion without an evidentiary hearing, the plaintiff need only make a *prima facie* case of jurisdiction." *Conn*, 667 F.3d at 711. The Sixth Circuit has characterized this burden as "relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). In determining whether plaintiff has met its burden, the district court considers the pleadings and affidavits "in a light most favorable to the plaintiff." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (*quoting Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)). However, "[p]ersonal jurisdiction must be analyzed and established over each defendant independently." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Second, when considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court

6

accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Twombly*, 555 U.S. at 555 (cleaned up).

## LEGAL ANALYSIS

In a joint motion to dismiss, the Individual Defendants contend that this Court lacks personal jurisdiction over either Individual Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(2). They claim that the Lease Agreement's forum selection clause does not confer personal jurisdiction over them individually because they were not parties to the Lease Agreement.[3]

---

[3] The Individual Defendants also argue that the Ohio long-arm statute does not confer jurisdiction over either individual and that exercising personal jurisdiction over the Individual Defendants would not comport with due process. However, because this Court finds that the Individual Defendants are bound by the Forum selection clause, such arguments need not be addressed.

The Individual Defendants also argue that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted as to each count against the Individual Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6). Each argument is discussed in turn below.

**A.**  **This Court has Personal Jurisdiction Over the Individual Defendants Through the Valid Forum Selection Clause.**

Plaintiff contends that the Individual Defendants consented to this Court's exercise of personal jurisdiction through the forum selection clause contained in the Lease Agreement.  It is well-settled that the Court must have personal jurisdiction over the litigants before it.  However, "[t]he requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citing *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 610 N.E.2d 987, 988 (Ohio 1993)). Forum selection clauses are one way for parties to consent to a specific court's exercise of personal jurisdiction and eliminate the need to conduct a due process and minimum contacts analysis. *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).

**1.**  **The Forum Selection Clause is Valid.**

The Individual Defendants appear to first challenge the validity of the forum selection clause.  In considering whether a forum selection clause is valid, the following factors are relevant: "(1) the commercial nature of the contract; (2) the absence of fraud or overreaching; (3) whether enforcement of the forum selection clause would otherwise be

unreasonable or unjust." *Id.* (citing *Info. Leasing Corp. v. Jaskot*, 784 N.E.2d 1192, 1195-96 (Ohio Ct. App. 2003)).

The Individual Defendants do not contest the commercial nature of the contract, nor do they allege that the forum selection clause was the result of fraud or overreaching. Rather, they appear to argue that application of the forum selection clause would be "unreasonable or unjust" because the forum selection clause lacks specificity and only confers non-exclusive jurisdiction to this Court, and thus "it would be unfair and run afoul of due process to bind the Abukatabs to the forum selection clause." (Reply in Support, Doc. 32, Pg. ID 631.) The Individual Defendants seem to argue that, due to the non-exclusive nature of the forum selection clause, the parties lacked reasonable notice that they could be subject to litigation in this Court. The Court disagrees.

First, the Individual Defendants argue that the forum selection clause does not apply to the present dispute because, "at best," it only applies to disputes "relating to interpretation of the Lease. . ." (*Id.*) But this argument is defeated by the plain language of the forum selection clause, which expressly states that "[t]he Agreement shall be interpreted *and applied* in accordance with the substantive law of the State of Ohio . . ." (Lease Agreement, Doc. 7-1, Pg. ID 119.) (emphasis added.) By including the phrase "interpreted and applied" in the forum selection clause, it is both clear and unambiguous that the parties intended the forum selection clause to cover questions of interpretation and application of the Lease Agreement. Thus, the forum selection clause applies to Plaintiff's causes of actions.

Second, the Individual Defendants argue that, because the forum selection clause

granted this Court non-exclusive jurisdiction over the claims, it does not confer personal jurisdiction to this Court. While the Individual Defendants cite no case law for this proposition, they attempt to support their argument by distinguishing *Cal-Tenn Financial, LLC v. Scope Automotive, LLC*, No. 3:18-cv-01347, 2019 WL 1282950 (M.D. Tenn. Mar. 20, 2019). In *Cal-Tenn*, the court concluded that a forum selection clause that conferred nonexclusive jurisdiction of Tennessee courts provided jurisdiction over the defendants. *Id.* at *6. The court stated that, "[w]hile the defendants are correct that the clause does not preclude jurisdiction elsewhere, it unequivocally confers jurisdiction to Tennessee courts should Cal-Tenn choose to invoke that jurisdiction. Cal-Tenn has done just that." *Id.*

This case is synonymous to *Cal-Tenn*. In this case, the forum selection clause states that the "Lessee and Lessor hereby submit to the non-exclusive jurisdiction of the district court of the United States for the Southern District of Ohio and of any other courts of applicable jurisdiction located in Cincinnati, Ohio." (Lease Agreement, Doc. 7-1, Pg. ID 119.) Thus, both parties could exercise their right to invoke jurisdiction in this Court, and Plaintiff did just that by filing its lawsuit. Therefore, the fact that the forum selection clause confers this Court non-exclusive jurisdiction does not alter Plaintiff's right to invoke that jurisdiction—and similarly binds Defendants to this choice. *See Cal-Tenn Fin., LLC*, 2019 WL 1282950 at *6.

Nor does the fact that the forum selection clause confers non-exclusive jurisdiction mean the Individual Defendants lacked reasonable notice that they could be subject to litigation in this Court. The language, as analyzed above, expressly provides that the parties submit to this court's jurisdiction. (*See* Lease Agreement, Doc. 7-1, Pg. ID 119.)

Thus, so long as the Individual Defendants are bound by the forum selection clause, discussed below, the plain language of the clause provided them reasonable notice they could be subject to litigation in this Court.

Accordingly, the forum selection clause is valid and provided the Individual Defendants with reasonable notice that they would be subject to litigation in this Court.

### 2. The Individual Defendants are Bound by Forum Selection Clause.

In general, contracts, including forum selection clauses, are "unenforceable against a person or entity who was not a party to the contract." *WashPro Express, L.L.C. v. VERwater Env't, L.L.C.*, No. CA2006-03-069, 2007 WL 6 41425, at *2 (Ohio Ct. App. 2007). However, there are exceptions to this rule, including when "the party is so closely related to the dispute that it is foreseeable that the party will be bound." *Highway Com. Servs., Inc. v. Zitis*, No. 2:07-cv-1252, 2008 WL 1809117, at *5 (S.D. Ohio April 21, 2008). For example, "shareholders, officers, and directors of a corporation may be bound by a forum selection clause in a corporate contract." *Id.* Courts are required to take "a common sense, totality of the circumstances approach" to determine if it is reasonable, in light of the specific circumstances, for a non-party to be bound by a forum selection clause. *G.C. Franchising Sys., Inc. v. Kelly*, No. 1:19-cv-49, 2021 WL 1209263, at *3 (S.D. Ohio Mar. 31, 2021) (quoting *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010)). Thus, the principal consideration is, based on the totality of the circumstances, "whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Id.* The decision as to whether non-signatories are bound

to a forum selection clause lies within the court's discretion. *H.H. Franchise Sys., Inc. v. Brooker-Gardner*, No. 14-cv-651, 2015 WL 4464774, at *3 (S.D. Ohio July 21, 2015).

As discussed below, the Individual Defendants are so closely related to the dispute that it was foreseeable that each would become involved in it. Accordingly, the Individual Defendants are bound by the forum selection clause, and this Court has personal jurisdiction over them.

### a. Zoila Abukatab

Here, Zoila Abukatab is indissolubly intertwined in 540 Auto's business. 540 Auto is a taxi and auto repair business with only six employees. (Am. Compl., Doc. 7, Pg. ID 96-97.) Ms. Abukatab has been identified as holding many different roles and positions at 540 Auto, including administrative manager, president, owner, and shareholder. (MTD, Doc. 14, Pg. ID 203.; Am. Compl., Doc. 7, Pg. ID 98.) More importantly, she signed the Lease Agreement on behalf of 540 Auto. (Lease Agreement, Doc. 7-1, Pg. ID 121.)

As a business with only six employees, it is expected that the president, administrative manager, owner, and shareholder of the business would be closely related to all business activities and thus this contractual dispute. Thus, it is both reasonable and foreseeable that she be bound to the forum selection clause.

While the Court acknowledges that Ms. Abukatab is not a party to the Lease Agreement, this fact, standing alone, is not dispositive. This Court has found on numerous occasions that holding the position of director, officer, or shareholder is enough for a Court to find the individual bound by a forum selection clause. *Highway Com. Servs., Inc. v. Zitis*, No. 2:07-cv-1252, 2008 WL 1809117, at *5 (S.D. Ohio April 21,

12

2008); *H.H. Franchise Sys.*, 2015 WL 4464774, at * 3. And, this Court is not alone, as many other courts throughout the country have similarly found. *See Marano Enterprises of Kan. V. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001); *See also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, n. 5 (9th Cir. 1988); *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-cv-2613, 2011 WL 711568, at *8 (N.D. Ohio Feb. 22, 2011); *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010). Thus, the Court is unpersuaded by Zoila Abukatab's argument.

Therefore, based on the totality of the circumstances, Zoila Abukatab is so closely related to the Lease Agreement and the dispute that it was reasonably foreseeable that she be bound by the forum selection clause.

### b. Abdul Abukatab

Abdul Abukatab is also so closely related to the contract dispute that it was foreseeable that he be bound by the forum selection clause. Considering the totality of the circumstances, viewed in a light most favorable to Plaintiff, *MAG IAS Holdings, Inc.*, 854 F.3d at 899, the Court concludes that it is reasonable for him to be bound.

Plaintiff alleged that Mr. Abukatab initiated contact with Plaintiff for the purpose of entering into the Lease Agreement. At all relevant times, Plaintiff alleged that Mr. Abukatab held himself out as the Managing Partner of 540 Auto. (Declaration of Keith Miller, Doc. 19-1, Pg. ID 536.) He presented himself "as in charge of all decisions relating to 540 Auto and its relations with [Plaintiff]." (*Id.*) He signed his name in the Principal section of the Credit Application submitted to MAL, claiming the title of the Business Operations Manager. (Credit Application, Doc. 19-2, Pg. ID 541.) He continued

13

communicating with Plaintiff via email and telephone throughout the course of the parties' business relationship. (Declaration of Keith Miller, Doc. 19-1, Pg. ID 536-37.) All emails between Plaintiff and 540 Auto came from Abdul's personal email address, where he continuously identified himself as the Managing Partner.  (*Id.*)

These facts demonstrate that it was "reasonably foreseeable" to Mr. Abukatab that he would become "involved in the relevant contract dispute," thus binding him to the forum selection clause.  *See G.C. Franchising Sys., Inc. v. Kelly*, No. 1:19-cv-49, 2021 WL 1209263, at *3 (S.D. Ohio Mar. 31, 2021).  Mr. Abukatab repeatedly communicated with MAL, self-identified himself as the principal for credit purposes, and continuously identified himself as the "Managing Partner" in charge of "all decisions" regarding 540 Auto and Plaintiff's business relationship.

Mr. Abukatab incorrectly suggests that a forum selection clause is only enforceable against a non-party when that non-party is "a shareholder, officer, or director of a corporation that is bound; a corporation wholly owned and controlled by a signatory of the contract; or an agent who has signed the contract in order to bind a principal." (Motion to Dismiss, Doc. 14, Pg. ID 210.) (citations omitted.) (*See also* Reply in Support, Doc. 32, Pg. ID 632.) (emphasis added.) The Individual Defendants cite to *Highway Communications Services* in support of this limiting proposition, but that case did not limit the inquiry as the Individual Defendants suggest.  To the contrary, in *Highway Com. Servs.*, the Court explained that "[a] non-party to a contract may be bound by a forum selection clause *if the party is so closely related to the dispute* that it is foreseeable that the party be bound." No. 2:07-cv-1252, 2008 WL 1809117, at *4-5 (S.D. Ohio Apr. 21, 2008) (emphasis

14

added). The Court then provided a non-exhaustive list of circumstances in which a party would be so closely related to the dispute that it is foreseeable that the party be bound. *See id*.

Thus, considering the totality of the circumstances, Mr. Abukatab was so closely related to this dispute that it would be foreseeable that he be bound to the forum selection clause. Accordingly, the Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is not well-taken.

**B.    Failure to State a Claim**

The Individual Defendants argue that Plaintiff's claims of unjust enrichment, conversion, fraudulent inducement, and alter ego should be dismissed against the Individual Defendants for failure to state a claim. Each argument is discussed in turn below.

**1.    Fraudulent Inducement**

The Individual Defendants next argue that Plaintiff's fraudulent inducement cause of action should be dismissed for two reasons. First, they argue that the fraudulent inducement and breach of contract claims are duplicative and, thus, the fraudulent inducement claim cannot survive. Second, they argue that the fraudulent inducement claim does not satisfy the heightened pleading standard pursuant to Federal Rule of Civil Procedure 9(b).

**a.    Plaintiff's Allegations Supporting Its Fraudulent Inducement Claim**

Before addressing the Individual Defendants' substantive challenges, it is

important to understand Plaintiff's actual allegations. Plaintiff's fraudulent inducement claim pertains to the alleged purchase of three vehicles. Specifically, Count Five alleges that the Defendants made material misrepresentations, or failed to disclose material facts, to MAL to induce MAL to purchase Units 1009007, 1009008, 1009009 from 540 Auto. Plaintiff alleges specifically that "[a]mong other things, Defendants falsely promised to deliver legal title to these three units to MAL, when in fact Defendants intended to and did purport to sell or otherwise transfer said vehicles to third parties, unbeknownst to MAL." (Am. Compl., Doc. 7, Pg. ID 102.) Plaintiff alleges that the misrepresentations were made during the term of the Lease Agreement. (*Id.* at 98.) Plaintiff alleges the fraudulent scheme, which is that the Defendants, including the Individual Defendants, made these misrepresentations with the intent to induce MAL to purchase the Units. (*Id.* at 102.) Plaintiff alleges its reliance on the misrepresentations and nondisclosures. (*Id.*) Lastly, Plaintiff alleges the injury suffered, which is that MAL cannot repossess the vehicles because it does not possess legal title. (*Id.* at 103.)

### b.     Pleading Both Contract and Fraudulent Inducement Claims

To prove fraudulent inducement under Ohio law, a plaintiff must establish:

> (1) A false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intend to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance.

*Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (quoting *Lepera v. Fuson*, 613 N.E.2d 1060, 1062 (Ohio Ct. App. 1992)).

16

"[T]he existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). However, "when one induces another to enter a contract through misrepresentations, there is a separate wrong, a tort that is distinct from claims based upon the contract itself." *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 774 (S.D. Ohio 2016).

Plaintiff's claim falls into this category: a tort distinct from the contract claim. Here, Plaintiff's fraudulent inducement claim is based on the Defendants' alleged misrepresentation that they would deliver legal title of the Units 1009007, 1009008, and 1009009 upon Plaintiff's purchases of the vehicles from 540 Auto. (Am. Compl., Doc. 7, Pg. ID 102.) Additionally, Plaintiff sufficiently alleges that the misrepresentations were made by the Defendants to induce Plaintiff into the purchase of the vehicles in question. (*Id.*) Plaintiff also sufficiently alleges that the Defendants had no intention of delivering legal title of the three vehicles to Plaintiff when making such promise. (*Id.*) Thus, considering the facts in light most favorable to Plaintiff, Plaintiff sufficiently pled that the Defendants misrepresented that they would deliver legal title to Plaintiff in order to induce Plaintiff to purchase the vehicles. Therefore, because Plaintiff sufficiently alleged that it was induced to purchase the vehicles based on the supposed misrepresentations, the fraudulent inducement claim survives.

### b.  Particularity

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge,

and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement when bringing a fraudulent inducement claim, a plaintiff must generally "allege the time, place, and content of the alleged misrepresentations on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Marlar v. BWXT Y-12*, LLC, 525 F.3d 439, 444 (6th Cir. 2008). The additional pleading requirements, however, "should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008). Rather, when a plaintiff "pleads in sufficient detail . . . to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* at 504.

Plaintiff's Amended Complaint alleges sufficient detail to allow the Individual Defendants to prepare a responsive pleading to the fraudulent inducement claim, and it sufficiently identifies the time, place, and content of the alleged misrepresentations, the scheme, the fraudulent intent, and the resulting injury.  Here, Plaintiff contends that the fraudulent scheme pertains to the purchase of three specific units, Units 1009007, 1009008, 1009009. (Am. Compl., Doc. 7, Pg. ID 102-103.) Plaintiff alleges that the representations were made so that Plaintiff would purchase these units, and that Defendants had no intentions to ever deliver title, intending instead to sell them to other third parties. Plaintiff further alleges that the fraudulent misrepresentations occurred during the period of the Lease Agreement. (*Id.*) Lastly, Plaintiff alleges the injury suffered, which is that MAL cannot repossess the vehicles because it does not possess legal title. (*Id.* at 103.)

18

As such, Plaintiff's Amended Complaint satisfies the particularity requirements of Rule 9(b).

### 2.    Unjust Enrichment

The Individual Defendants further contend that Plaintiff's unjust enrichment claim should be dismissed because Ohio law prohibits claims of unjust enrichment when an express agreement governs the dispute. However, Plaintiff claims that it may plead breach of contract and unjust enrichment as alternative theories of recovery. The Court agrees.

Ohio law provides that, to succeed on an unjust enrichment claim, a plaintiff must show: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment . . ." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (quotations omitted).  Unjust enrichment may be pled "in the alternative to a breach of contract claim when the existence of a contract is in dispute." *Bihn v. Fifth Third Mortg. Co.,* 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013). Additionally, this Court has held that, even if an express contract exists, a party may plead unjust enrichment "where there is evidence of fraud, bad faith, or illegality." *Bush Truck Leasing, Inc. v. Cummins, Inc.*, No. 1:18-cv-871, 2020 WL 3871322, at *8 (S.D. Ohio Jul. 9, 2020); *see also Teknol, Inc. v. Buechel*, No.C-3-98-416, 1999 WL 33117391 (S.D. Ohio Aug. 9, 1999); *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio 2012).

There is an express contract in this case. However, Plaintiff also claimed that the

Defendants' conduct constitutes fraudulent inducement. (Am. Compl., Doc. 7, Pg. ID 102.) As discussed above, Plaintiff's fraudulent inducement claim against the Individual Defendants survives the Individual Defendant's Motion to Dismiss. At this stage of the litigation, the Court is inclined to permit the unjust enrichment claim to proceed.

### 3. Conversion

Defendant also contends that Plaintiff's conversion claim should be dismissed because Plaintiff's "conversion claim is inextricably intertwined with its contract claim." (MTD, Doc. 14, Pg. ID 217.) Conversion has been defined as the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454, 456 (Ohio 1975), *rev'd on other grounds*, 433 U.S. 562 (1977). The elements of a conversion claim are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Highman v. Gulfport Energy Corp.*, No. 20-cv-1056, 2020 WL 6204344, at *3 (S.D. Ohio Oct. 22, 2020) (quoting *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996)).

The Individual Defendants argue that Plaintiff's conversion claim should be dismissed because the conversion claim is too factually intertwined with the breach of contract claim to survive, citing *Acad. Imaging v. Soterion, Corp.*, 352 F. App'x 59, 67 (6th Cir. 2009). This Court has noted in the past that such argument, at the pleading stage, is not well taken. *See People10 Techs. Inc. v. Alveo Health LLC*, No. 20-cv-762, 2021 WL 4288360, at *6 (S.D. Ohio Sept. 21, 2021). In *Acad Imaging*, the Sixth Circuit reviewed a

summary judgment decision. 352 Fed. Appx. at 61. Thus, the Sixth Circuit reviewed a factually developed record to determine that the plaintiff's conversion claim would mirror its breach of contract claim and granted summary judgment on the conversion claim in favor if the defendant. *Id.* at 67.

Unlike *Acad. Imaging*, this case is only at the pleading stage. And Fed. R. Civ. P. 8(D)(2) allows claims to be pled in the alterative. "Definitionally, pleading in the alternative must mean that a party can plead two causes of action even if proving one is fatal to the other." *People 10 Techs. Inc.*, 2021 WL 4288360 at *6. Thus, without discovery and a developed factual record, the Court cannot conclude that Plaintiff's conversion claim and breach of contract claim are so inextricably intertwined as to require dismissal of the conversion claim at this stage of litigation.

### 4. Alter Ego

The Individual Defendants lastly argue that Plaintiff's alter ego cause of action should be dismissed for failure to state a claim. The Individual Defendants argue that Plaintiff failed to plead sufficient facts that show the individuals exercised the requisite control over 540 Auto and, instead, pled only a factual recitation of the control element. Additionally, the Individual Defendants argue that, because Plaintiff's conversion and fraudulent inducement causes of action against the Individual Defendants fail, Plaintiff's Amended Complaint fails to satisfy the fraud, illegal conduct or unlawful conduct element of that alter-ego claim.

A fundamental principle of corporate law is that shareholders, officers, and directors cannot be liable for the wrongdoings of the corporation. *Belvedere Condominium*

21

*Unit Owners' Assn v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1085 (Ohio 1993). However, there is an exception to this rule. *Id.* "Under this exception, the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Id.*

To establish a claim for piercing the corporate veil, or alter ego, Plaintiff must first show that the individual shareholder, officer, or director exercised control over the corporation that "was so complete that the corporation has no separate mind, will, or existence of its own." *Id.* at 1086. Additionally, Plaintiff must establish that "the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similar unlawful act." *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 545 (Ohio 2008). A plaintiff must lastly show "injury or unjust loss resulted to the plaintiff from such control or wrong" for an alter ego cause of action to survive. *Belvedere Condominium*, 617 N.E.2d at 1086.[4]

To satisfy the first prong of the *Belvedere-Dombroski* test, a plaintiff must demonstrate that the shareholder, officer or director are "fundamentally indistinguishable" from the corporate entity. *Allied Diversified Constr., Inc. v. Elite Mech., Inc.*, No. 1:16cv334, 2016 WL 7034238, at *4 (S.D. Ohio Dec. 2, 2016) (quoting *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005)). This Court has also held that "the question

---

[4] The Individual Defendants do not argue that Plaintiff failed to establish the injury or unjust loss element of Plaintiff's alter ego claim. Plaintiff sufficiently pled damages in this case. Thus, the Court views that element as conceded.

22

of whether [a director or shareholder] exercised a degree of control over [a corporation] justifying [a] Court's holding it accountable. . . is a fact-sensitive question which should not be answered until the Plaintiff has had some opportunity to conduct discovery on this matter." *Orrand v. Kin Contractors, LLC*, No. 2:09-cv-1129, 2011 WL 1238301, at *4 (S.D. Ohio Mar. 30, 2011) (quoting *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003)). "[D]istrict courts are reluctant to dismiss veil-piercing claims on the basis of failure to sufficiently plead the control element without the benefit of discovery." *Allied Diversified Constr. Inc.*, 2016 WL 7034238 at *4.

A review of the pleadings reflects that Plaintiff's assertion of specific facts to show that the Individual Defendants clearly exercised the requisite control over 540 Auto is thin at best. However, as this Court has recognized before, the question of control is a fact-sensitive question requiring discovery before a court can adequately evaluate the question of control, and at this time, the Court concludes that dismissal is not warranted.

Piercing the corporate veil is a "rare exception" to the limited shareholder liability rule that "should only be applied in the case of fraud or certain other exceptional circumstances." *Dombroski*, 895 N.E.2d at 544. A plaintiff must have a valid fraud, illegal act, or unlawful act claim against a defendant in order to pierce the corporate veil. *See id.* As described above, both the conversion and fraudulent inducement claims survive. Thus, the second prong is satisfied, and the claim survives.

## CONCLUSION

For these reasons:

(1) The Individual Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

and Failure to State a Claim (Doc. 14) is **DENIED**; and

(2) Abdul Abukatab's Motion to Dismiss (Doc. 4) is **DENIED AS MOOT**.


**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND